Filed 2/2/15  Sanchez v. Navarro CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| J. PATRICIA SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>TONY NAVARRO,<br><br>Defendant and Appellant;<br><br>JENNIFER SANCHEZ, as Trustee, etc.,<br><br>Objector and Respondent. | F067802<br><br>(Super. Ct. No. 08CEFL00595)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Glenn R. Wilson for Defendant and Appellant.

Walters & Moshrefi and Jennifer L. Walters for Objector and Respondent.

-ooOoo-

In June 2008, the family court ordered Tony Navarro to pay a monthly child support obligation for his then two-year-old son, Christopher Navarro, to Christopher's mother, J. Patricia Sanchez, and each parent to pay 50 percent of Christopher's childcare and unreimbursed medical costs.  In December 2008, Navarro filed a motion to modify

his child support obligation based on changed circumstances. The matter was closed when a psychological evaluation was not timely filed. In March 2009, Navarro re-filed his motion, by which he sought to have Sanchez pay him guideline child support; the motion was continued numerous times for a variety of reasons. Before a trial could be held on his modification request, Sanchez fell ill and died. During Sanchez's illness, the family court temporarily reduced Navarro's support obligation to zero.

Navarro subsequently moved to join Jennifer Sanchez, as trustee of the J. Patricia Sanchez Trust, as a party to the modification proceeding for the purpose of disclosing the trust's assets and distributing those assets to him for Christopher's support. The family court granted the joinder motion, but only to allow it to make appropriate orders based on Sanchez's obligation to pay half of the childcare and unreimbursed medical costs. The family court denied Navarro's request to retroactively impose a monthly support obligation against Sanchez after her death, which could be charged against the trust.

On appeal, Navarro argues it was reversible error for the family court to limit the relief that may be sought against the trust to the specific child support orders in existence at Sanchez's death and to refuse to address other child support issues pending at the time of her death. He also argues the family court erred when it refused to address his request for interim ongoing child support, failed to issue an order for the service of summons and motion for joinder, and refused to prepare a written statement of decision which he requested before the hearing. While we conclude that the family court did not err in declining to issue a statement of decision, we also conclude the family court abused its discretion in ruling, in effect, that Navarro's modification proceeding does not survive Sanchez's death. Accordingly, we vacate the family court's denial of Navarro's request to retroactively impose a support obligation on Sanchez after her death, but otherwise affirm the family court's order.

## FACTS

Sanchez and Navarro, who were never married to each other, are the parents of Christopher, who was born in October 2005. In February 2007, Navarro, who had been absent from Christopher's life, told Sanchez he wanted a relationship with Christopher. On June 3, 2008, the family court issued an order giving Sanchez sole legal and physical custody of Christopher. Navarro was given visitation in a four-stage graduated plan, which would culminate with Navarro having weekend visits on the first, third and alternating fifth weekends of the month. The family court ordered Navarro to pay Sanchez $241 per month in child support, retroactive to March 4, 2008. The parties each were responsible for one-half of all uncovered/unreimbursed health care expenses and one-half of all work-related childcare costs. The family court ordered child support, childcare costs and arrears payable through the Department of Child Support Services (DCSS) beginning July 1, 2008.

On December 18, 2008, Navarro filed a motion to modify child custody, child support, and visitation, and requested an award of attorney fees and costs. Navarro declared that by the time of the hearing on the motion he would be in the fourth phase of the graduated parenting plan. He was seeking more time with Christopher; an order for joint legal and physical custody; discontinuance of supervised exchanges; and that daycare costs no longer be collected through DCSS. Navarro also requested guideline child support.

At the April 27, 2009 hearing on the motion, the family court ordered the parties to complete a psychological evaluation before it would modify the custody and visitation orders. The family court ordered the parties to split the cost of the evaluation, with Sanchez paying three-fourths of the cost and Navarro paying the remaining one-fourth. Child support was not modified. According to the reporter's transcript of the hearing, when Navarro's counsel asked whether "all other issues" were going to be reserved and explained what that meant, the trial court responded "[t]hat's fine." The minute order of

3.

the hearing, however, does not specifically state that the remaining issues have been reserved; it does state that all prior orders not modified are to remain in full force and effect, and the minute order would serve as the order of the court.

On March 9, 2010, Navarro filed another motion to modify child custody, child support, visitation, and childcare costs, and requested attorney fees and costs. Navarro explained that the parties participated in the psychological evaluation from July through September 2009; on December 17, 2009, Navarro's counsel asked the clerk's office and family court services about the status of the evaluation, and was advised it had not yet been received; and on February 10, 2010, Navarro's counsel again inquired with the court about the evaluation and was told that while it had been submitted, the case had been closed due to the time lapse. Navarro now was asking the family court to receive the evaluation and place the matter back on calendar, including the issues of child custody, support and visitation. Navarro again asked for joint legal and physical custody, modification of visitation, and modification of the existing child support order of $241 per month.

At a hearing on April 5, 2010, the case was sent to mediation. A trial was set for August 24, 2010, which was continued to November 30, 2010. After another continuance, the trial ultimately began on February 9, 2011 and continued intermittently over four additional days in February.

On March 10, 2011, Navarro filed an updated supplemental trial brief. Navarro requested child support from December 18, 2008 through March 11, 2011, using Sanchez's income of nearly $8,000, his income at zero, and his physical responsibility timeshare of 17%, giving Sanchez appropriate adjustments for health insurance, mandatory retirement and union dues. Navarro further asked that Sanchez be ordered to reimburse him for any overages in child support paid to her since December 18, 2008, and stated he overpaid childcare costs by more than $3,000. After trial, Navarro filed a closing brief on March 14, 2011.

4.

On March 18, 2011, the trial court issued a tentative ruling and ordered Navarro to prepare a statement of decision, which was filed on June 20, 2011. The trial court ordered that Sanchez maintain sole legal custody, which would become joint legal custody after the completion of six months of conjoint counseling, and that the parties would have joint physical custody, with Christopher residing primarily with Sanchez and living with Navarro on the first, third and fifth weekends of each month. The trial court declined to issue rulings on child support, whether childcare expense payments should be made directly to the childcare provider, and whether Navarro was entitled to attorney fees and costs, as the matter was set to be heard in a different department at a different time.

The parties subsequently filed additional child support information, and the motion for child support and attorney fees was continued to April 21, 2011. Another trial date was set regarding child support, followed by several continuances. A trial date was set for December 15, 2011; according to a November 17, 2011 minute order, the issues identified for trial were child custody, support, and care, as well as attorney fees.

On November 17, 2011, Navarro filed points and authorities on these issues. Navarro asked for modification of child support to the guideline calculation based on his current timeshare and for reimbursement for overpayments from December 2008 to the present, that childcare costs be paid directly to the provider and reimbursement for overpayment from December 2008 to the present, and for $34,250 in attorney fees. In an accompanying trial brief, Navarro set forth his position on the custodial periods of time relevant to the computation of child support from December 18, 2008, the parties' income for each identified custodial period, the applicable law relative to the proper computation of guideline child support, and his proposed resolution of the issues. Navarro recognized the parties did not agree on the percentage of time Christopher resided with each party.

On December 15, 2011, Navarro's request to set his child support payment at zero was denied and the trial continued to March 6, 2012.

On January 12, 2012, Navarro filed an ex parte request for child custody and modification of child support. In an accompanying declaration, Navarro stated that the parties had completed conjoint counseling sessions, they were now sharing joint legal custody of Christopher, and Navarro was receiving additional custodial time. Navarro estimated his current timeshare at approximately 42%. Navarro requested an order awarding him temporary physical custody of Christopher based on a significant change of circumstances, as Sanchez was hospitalized and could remain hospitalized for some time, and asked for custody until Sanchez was released from the hospital and was capable of caring for Christopher. Navarro further requested that child support be set at zero as long as Christopher was in his temporary physical custody, until Sanchez had recovered and the issue of support could be fully litigated and resolved.

On March 6, 2012, the date set for the contested hearing, the family court found good cause to continue the hearing to June 27, 2012. Pending further order, the family court set the temporary order for child support at zero commencing March 1, 2012. All prior orders not modified by the family court were to remain in full force and effect.

Trial was to begin on December 5, 2012. At the outset, Sanchez's counsel reminded the family court that Sanchez had been diagnosed with leukemia in January 2012, and the trial had been continued to December due to Sanchez's illness. Sanchez was unable to be in court because she was in the intensive care unit; her health condition was very serious. Navarro's counsel objected to continuing the trial and asked for an interim order for child support effective immediately, as Navarro had been the primary custodial parent during Sanchez's illness yet Sanchez was not paying any support. The trial court found good cause for continuance and denied the request for an interim support order. Navarro's counsel pointed out that if the trial were continued, the court should understand the likelihood that Sanchez was not going to survive and if that happened, "there are no orders for nothing regarding child support. Right now it's setting at zero. There is no reimbursement." Sanchez's counsel pointed out that if the court was

6.

considering setting the matter for an issue of ongoing support, it needed to go back to one of "those departments" since this was a DCSS case. Navarro's counsel requested a referral back to child support court so he could get an interim order in place. The trial court set a child support hearing date for January 29, 2013, and a trial date for March 27, 2013.

Sanchez passed away on December 13, 2012. Before her death, in February 2012, Sanchez transferred her assets into a living trust.[1] On January 28, 2013, Navarro filed points and authorities for the January 29, 2013 child support hearing scheduled for the following day. Navarro argued the family court retained jurisdiction over child support after Sanchez's death, a child support order was enforceable against Sanchez's living trust, the family court had jurisdiction to join the trustee of Sanchez's living trust for the purpose of ordering child support payments from the trust's corpus, and the proper procedure was to substitute the personal representative of Sanchez's estate or her successor in interest as a party to the still-pending action. Navarro further argued the family court had authority to determine child support and childcare costs during the time periods he previously set forth and the calculation for the last period of time that Sanchez was alive would become the "ongoing child support" to be collected from the trust.

At the January 29, 2013 hearing, the family court continued the matter on the issue of child support from the trust fund to March 11, 2013. DCSS informed the court it would no longer be involved in the case. The court denied, without prejudice, Navarro's counsel's request to have Sanchez's counsel release the name of the trust account and information concerning it.

The following day, January 30, Navarro filed a motion and declaration for joinder, with a hearing date set for February 25, 2013. Navarro sought to join "Jennifer Sanchez,

---

[1] The appellate record does not contain the trust documents or other evidence that shows the terms of the trust.

as Successor Trustee of the J. Patricia [Sanchez] Revocable Living Trust Agreement dated January 12, 2012" (the trustee). Navarro asserted the trustee was in control of certain property and assets available to support Christopher, and the family law court was the appropriate venue to hear the matter because he had previously attempted to enforce the child support orders, but he had not obtained a support order due to Sanchez's "ongoing medical condition," and the DCSS had deferred the matter to the family law court. Navarro further asserted that the trustee was either an indispensable or necessary party because she had control of the trust's assets which should be used primarily to support Christopher and it was imperative to join her as a party "for purposes of disclosing the nature and extent of assets and securing the distribution of assets to Christopher's sole surviving parent, for his ongoing care and support."

Navarro filed a request for judicial notice, asking the family court to take judicial notice of (1) his November 17, 2011 trial brief, which described the issues to be addressed by the court, (2) the March 6, 2012 order after hearing, which shows that the court set temporary child support at zero pending the results of the trial, and (3) the December 5, 2012 minute order that shows the issue of ongoing temporary child support had been set for a separate hearing on January 29, 2013 pending trial, which was still pending upon Sanchez's death.

On March 11, 2013, the motion for child support was continued to March 18, 2013, to be heard with the motion for joinder. On March 14, 2013, Navarro filed a reply to the trustee's responsive declaration, which included an objection and request to strike the declaration.[2] Navarro asserted the primary issues in the case were whether, when the family court had reserved jurisdiction to make child support and attorney fees orders, (1) a parent can avoid having child support and attorney fees orders made against her

---

[2] Although the trustee filed a responsive declaration, is not part of the appellate record.

8.

because she was too ill to attend court, placed her assets in a trust, and then died before a specific monetary order was in place; and (2) the successor trustee could be joined in this proceeding for the purposes of reaching trust assets for payment of ongoing child support and arrears, reimbursement of overpayment of child support and payment of attorney fees, where no such orders were in place at the time of the parent's death.

Navarro asserted it appeared the trustee was contending that she should not be joined in the action because there was no order for child support in an amount certain with Sanchez as the obligor when Sanchez died or, alternatively, only the parent receiving child support may seek to join the successor in interest of a deceased obligor parent. Navarro argued that because the court reserved the issues of child support and costs, arrears and attorney fees, it retained jurisdiction to make orders relating to these issues, and by demanding a trial on these issues, Sanchez agreed to be bound by the court's ruling on them and expected these issues to survive her. Navarro requested the court grant his motion to join the trustee to these proceedings for the purpose of resolving the pending monetary issues so that any award could be satisfied through order to the trustee. Navarro also filed a written request for a statement of decision pursuant to Family Code sections 3654 and 4056.[3]

The hearing on the motions for joinder and child support was held on April 30, 2013. The family court began with explaining its tentative ruling, which was to grant the request for joinder, modify Navarro's support to zero retroactive to March 9, 2010, and deny Navarro's request for a statement of decision under California Rules of Court, rule 3.1590,[4] because this was a motion, not a trial. In response, the trustee's counsel contended that while she agreed a support obligation was enforceable against a living trust when the obligor dies, in the cases that allowed for this, there was an order in

---

[3] Undesignated statutory references are to the Family Code.

[4] Undesignated references to rules are to the California Rules of Court.

existence at the time of death. The family court explained that there was a child support order in effect, namely that Sanchez was ordered to pay 50% of all unreimbursed health expenses and childcare costs. The trustee's counsel responded that there was no order against the trust and the matter should be heard in probate court.

Navarro's counsel recounted the history of the case and asserted that Navarro had been trying since December 2008 to get a child support order against Sanchez, yet the matter had been continued numerous times for various reasons. Navarro's counsel further argued the existence of the trust, which Christopher would not benefit from until he was 25, had not been disclosed to either him or Navarro before Sanchez's death. Navarro's counsel claimed he cited cases showing that because the family court retained jurisdiction, it had the ability to issue a support order retroactively against the trust's assets, and support could be modified after the death of one of the parties.

Navarro's counsel explained Navarro was asking for joinder of the trustee; that the trust be put in Sanchez's shoes when she was alive strictly for the purpose of paying out any award of child support, arrearages, and childcare costs; for the family court to order ongoing guideline child support that is payable by the trust; and for the family court to address the arrearages going back to the time of the original motion so Navarro could be reimbursed for the overpayment of child support and payments that were not made during the pendency of the action. Navarro's counsel did not know if the family court had sufficient information to make orders on the monetary issues, but asked that those orders be made at some time. Counsel contended Navarro was entitled to a statement of decision under section 3654 because he requested one. Counsel further contended that attorney fees should also be awarded against the trust, which would be subject to proof at a subsequent hearing. Finally, counsel asked that, at a minimum, the family court make an ongoing support order that day in accordance with the highest of the support calculations included in Navarro's brief.

10.

The court responded that it could not make a support order since it had "zero information" concerning what was in the trust and what was available for disbursement. Navarro's counsel conceded he did not have the information as to the trust's assets, but contended the family court's file contained sufficient information to make an order based on Navarro's income and expense declarations.

The trustee's counsel asserted Navarro's argument went beyond the motion for joinder, which did not indicate anything about setting temporary support orders and was simply seeking to join the trustee for purposes of disclosing the nature and extent of assets and securing distribution of assets to Navarro. The trustee's counsel did not know how the court could hear the matter without a party, as she was not going to defend Sanchez and the trustee was not there in Sanchez's place. After further argument, the family court took the matter under submission.

On May 30, 2013, the family court issued its written findings and order on the motion for joinder of the trustee. The family court recognized that it was well-established that a child support obligation survives the death of the supporting parent and is charged against that parent's estate, and that a child support obligation is enforceable against a living trust. The family court found there was a child support order that was in effect when Sanchez died, namely the June 3, 2008 order which ordered Navarro to pay $241 per month and both parents to pay half of unreimbursed health expenses and childcare costs, that was modified on March 6, 2012 to reduce Navarro's payments to zero. The family court determined that, pursuant to section 4062, the order as to Sanchez was an order for additional child support.

The family court did not agree with Navarro's argument that the issue of child support was reserved back to 2008, as it found that court declined to modify child support after hearing the December 18, 2008 motion to modify. The family court recognized that Navarro filed another motion to modify support on March 9, 2010, and that on March 6, 2012 his payment was modified to zero, but determined there was no express statement

11.

indicating the family court was reserving jurisdiction to retroactively modify child support back to the date of filing. The family court rejected Navarro's assertion that it had the authority to order ongoing support and arrears.

Based on these findings, the family court granted the motion for joinder so the court could make appropriate orders based on Sanchez's obligation to pay half of the unreimbursed medical and the childcare costs, which survived her death. Since there was no precedent allowing for a post-death increase in a child support order, it denied Navarro's request to retroactively impose a monthly support order against Sanchez after her death, which could then be charged against the trust. Finally, the family court denied Navarro's request for a statement of decision, as this was not an order modifying, terminating or setting aside a support order, or a trial where factual findings were made.

## DISCUSSION

By this appeal, Navarro asks us to review the family court's ruling on his motion for joinder. He asserts it was reversible error for the family court to (1) grant his motion to join the trustee, but then to limit the relief that may be sought against the trust to the specific child support orders in existence when Sanchez died and refuse to address other child support issues that were pending at the time of her death, (2) refuse to address the issue of interim ongoing child support when that motion was to be heard the same date as the joinder motion, (3) fail to issue an order for the service of summons and motion/petition for joinder, and (4) refuse to issue a written statement of decision.

We begin with the family court's refusal to issue a statement of decision. Navarro contends it was reversible error not to issue a written statement of decision, as one was required by sections 3654 and 4056.

Section 4056 requires the court to state, on the record or in writing, the guideline formula result when a trial court orders child support in an amount that deviates from the guideline formula amount. (§ 4056, subd. (a).) This requirement is inapplicable here because the family court did not make an order for child support. Instead, it ruled on

12.

Navarro's motion for joinder and denied his request to modify the existing support order. For this same reason, section 3654, which requires a trial court to issue a statement of decision at a party's request when making "an order modifying, terminating or setting aside a support order," does not apply, as the family court was not making such an order.

Navarro also asserts a statement of decision was required by Code of Civil Procedure section 632[5] and rule 3.1590.[6] But this was not a trial in which factual findings were made. (*In re Marriage of Stich* (1985) 169 Cal.App.3d 64, 76 [a request for a statement of decision is appropriate only after the determination of a factual issue].) Instead, it was a motion for joinder. Generally, a party is not entitled to a statement of decision under Code of Civil Procedure section 632 following a ruling on a motion except in special cases. (*Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 660.) *In re Marriage of S.* (1985) 171 Cal.App.3d 738 (*Marriage of S.*), which Navarro cites, stands for the proposition that custody orders may fall within this exception, and thus the failure to issue a statement of decision upon a timely request following a custody ruling is *per se* reversible error. (*Marriage of S.*, *supra*, 171 Cal.App.3d at p. 750; see also *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792 [noting that while custody is a special proceeding "statutory and decisional law nevertheless require findings of fact

---

[5] Code of Civil Procedure section 632 provides, in pertinent part, that "upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision, unless the trial is concluded within one calendar day … in which event the request must be made prior to the submission of the matter for decision. . . ."

[6] Rule 3.1590(a) provides, in pertinent part: "On the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. . . . " Rule 3.1590(d) states: "Within 10 days after announcement or service of the tentative decision, whichever is later, any party that appeared at trial may request a statement of decision to address the principal controverted issues. . . ."

when requested by a party[,]" which includes issuing a statement of decision], superseded on other grounds by statute as stated in *In re Zacharia A.* (1993) 6 Cal.4th 435, 448.) But this was not a custody hearing. Navarro has failed to show that, under any of the statutory or decisional law cited, the family court was required to issue a statement of decision.

Turning to the joinder motion, section 2021, subdivision (a) allows joinder of a third party to a family law action if the party claims an interest in the proceeding. Rule 5.24 provides that a court may order a party joined to a family law proceeding if the person "claims or controls an interest in any matter subject to disposition in the proceeding." A court may order a person joined to a family law proceeding if joinder is appropriate to determine a particular issue, and the person to be joined is either indispensable to a determination of that issue or necessary to the enforcement of any judgment rendered on that issue. (Rule 5.24(e)(2).) The court's decision is permissive, not mandatory. (*Schnabel v. Superior Court* (1994) 30 Cal.App.4th 758, 762-763.) We review a trial court's decision on joinder for abuse of discretion (*id.* at p. 763), and draw all reasonable inferences in favor of the court's decision. (*Estate of Carter* (2003) 111 Cal.App.4th 1139, 1154.)

Here, Navarro requested that the trustee be joined for the purpose of disclosing the nature and extent of the trust's assets, and to secure the distribution of assets to him as Christopher's surviving parent for Christopher's support.

"It is well established that a child support obligation survives the death of the supporting parent and is a charge against his or her estate. (*Taylor v. George* (1949) 34 Cal.2d 552, 556 ['In California the rule is that the obligation of a father to support his minor child which is fixed by divorce decree ... does not cease upon the father's death, but survives as a charge against his estate.']; *In re Marriage of Bertrand* (1995) 33 Cal.App.4th 437, 440 ['Although husband has since died, his support obligation survives his death and is a charge against his estate ....']; *In re Marriage of Gregory* (1991) 230

14.

Cal.App.3d 112, 115 ['... it has been established that court ordered child support survives the death of the noncustodial parent and becomes a charge upon his or her estate'].)" (*In re Marriage of Perry* (1997) 58 Cal.App.4th 1104, 1106 (*Perry*).)

In addition to being a charge against a supporting parent's estate, court-ordered child support becomes a charge against that parent's living trust, when his or her assets are in such trust rather than in an estate. (*Perry*, *supra*, at p. 1106 ["[F]or purposes of the surviving child support obligation, there is no difference *in substance* between an estate which might be properly charged with the child support obligation and property held by a living trust."].)

Under these authorities, Sanchez's child support obligation survived her death and became a charge against her estate, which apparently was comprised solely of her living trust. As the family court found, the trustee, who has control of the trust, is a proper party to this case, since the trust is necessary to the enforcement of that obligation.

The family court found that a child support order was made before Sanchez died, namely the June 2008 order that required Navarro to pay $241 per month and both parents to pay 50% of all necessary unreimbursed medical, dental and vision expenses and 50% of childcare costs, which was modified on March 6, 2012 to reduce Navarro's payments to zero, and that this order was enforceable against the trust. The family court, however, went further and denied Navarro's request to retroactively impose a monthly support order against Sanchez after her death or to allow a post-death increase in support. In effect, the family court determined that Navarro could not maintain his motion for modification of child support, which was pending when Sanchez died.

The issue at this stage of the proceedings, however, is whether the trust is properly joined as a party because Navarro has an arguable claim to an interest in the trust, not whether he has proved that claim. As Navarro asserts in his reply brief in responding to the trustee's assertion that the standard of review of a joinder motion is for abuse of discretion, the family court "was faced with one of two choices in resolving his Joinder

15.

motion.  The lower court should either have granted or denied the Joinder motion. . . . [¶] Instead of simply granting or denying the Joinder, the lower court made it conditional and/or applicable only to issues and/or sub-issues which it believed were pending in the matter for which the Joinder was sought and which issues and sub-issues had not been identified within father's Joinder motion."

Instead of simply joining the trustee to the proceeding, the family court found Navarro did not have a claim for monthly child support to which the trust was subject because of the lack of authority on whether a parent may obtain a post-death increase in a child support order.  As the parties admit, there are no published cases on this issue.  The appellate court in *Perry*, however, recognized the issue, although it did not decide it. There, after the birth of his daughter, the father was badly injured in an auto accident and obtained a structured settlement that entitled him to a monthly income stream plus larger, periodic, lump sum payments.  (*Perry*, *supra*, 58 Cal.App.4th at p. 1106.)  After the marriage dissolved, the father was ordered to pay $350 a month in child support. Thereafter, he transferred all his rights in the structured settlement to a living trust controlled by his mother as trustee, with half to be distributed to any surviving parents, a fifth to his siblings, and the remaining 30 percent to remain in the trust for distribution to his daughter when she turned 40.  (*Ibid.*)

The father died the following year and the trustee discontinued making child support payments as the daughter was eligible for social security survivors' benefits. (*Perry*, *supra*, 58 Cal.App.4th at p. 1107.)  Over two years later, the daughter filed an order to show cause proceeding in the dissolution proceeding in part to modify the child support order upward, based in part on the assertion that money had been freed up because her father no longer needed it for personal and medical expenses.  (*Ibid.*)  The trustee was joined to the family law proceeding.  The family law judge later issued a decision in which he ruled that the trust owed back child support of $350 per month for the years the trustee failed to pay support, he increased monthly child support to $800 per

month, and he required the trustee to make the payments out of the funds held by the trust. (*Ibid.*)

On appeal, the trustee argued there was no estate left to pay the father's child support obligation. (*Perry*, *supra*, 58 Cal.App.4th at pp. 1108-1109.) The Court of Appeal rejected his argument, holding that a supporting parent's estate for purposes of a child support order includes property put into a living trust, and the trust property must be available to satisfy a valid child support obligation, no matter what the trust's terms of distribution. (*Perry*, *supra*, 58 Cal.App.4th at pp. 1108-1109.) In so holding, the court noted that this was not a case where the deceased supporting parent made a provision in his or her lifetime for payment of an existing child support order, as the 30 percent of living trust property reserved for the daughter was beyond her reach until she was 40 years old and the trust's terms indicate an intention to avoid any child support obligation whatsoever. (*Id.* at p. 1110.) On that basis, the court concluded the family law court could properly make a child support order from the whole of the trust, not just the 30 percent earmarked for the daughter. (*Ibid.*)

The court then noted the problem of the post-death increase in the child support order, but did not decide the issue because the trustee did not argue on appeal that the family law court should not have made an upward modification of an existing child support order after the father's death. (*Perry*, *supra*, 58 Cal.App.4th at p. 1110.) The court noted that to allow a post-death increase in an existing child support order on the theory that the death frees up money otherwise needed by the decedent would severely destabilize estate planning, but emphasized that "[t]he circumstances of exactly when such an increase *might* be allowed, if *ever*, are not before us." (*Ibid.*)

Here, the family court distinguished *Perry* from the present case on the basis that in *Perry*, there was an existing child support order that obligated the deceased parent to pay monthly support at the time of his death, and noted that the case did not address the issue of retroactive modification of support after death. The family court further noted

17.

there was no precedent that allows a post-death increase in a child support order and, on that basis, denied Navarro's request to retroactively impose a monthly support order against Sanchez after her death.

The family court's determination of this issue, however, was unnecessary to its decision on whether to join the trustee to this proceeding. The finding was made without knowing the terms of the trust or its financial condition. Navarro argues this is a case in which an upward modification should be allowed, as his motion for child support commenced long before Sanchez's death and she made no provision on her death for Christopher's ongoing support. Given that this is an equitable proceeding arising in the family law court (*Perry*, *supra*, 58 Cal.App.4th at p. 1109), this issue cannot be decided in a vacuum.

Accordingly, we vacate the family court's denial of Navarro's request to retroactively impose a monthly support order against Sanchez's trust. Although it may ultimately be determined that a post-death increase is not allowable, we do not see how this decision can made at this stage in the proceedings.

As for the remaining issues, Navarro's assertion that the family court erred in refusing to address the issue of interim support fails because Navarro did not request that an appropriate representative of Sanchez's estate be substituted in Sanchez's place as a party to the modification proceeding. (See, e.g., *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151 [where the family court expressly reserves jurisdiction over collateral issues . . . "'the proper procedure is to substitute the personal representative of the deceased spouse's estate (or, if none, the spouse's successor in interest) as a party to the *still-pending* action . . . whereupon the reserved issues are properly decided under the Family Code'"]; Code Civ. Proc., § 377.41 ["On motion, the court shall allow a pending action or proceeding against the decedent that does not abate to be continued against the decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest . . . "]) Instead, the joinder motion requested only that the

18.

trustee be joined for the purpose of reaching the trust's assets. Moreover, the family court explained why it could not make a support order at the hearing, as it had no information about the trust's assets and what was available for disbursement. Navarro has not shown error.

Navarro also contends the family court failed to comply with rule 5.24(e)(3), which provides that when the court "orders that a person be joined as a party to the proceeding under this rule, the court must direct that a summons be issued on *Summons (Joinder)* (form FL-375) and that the claimant be served with a copy of *Notice of Motion and Declaration for Joinder* (form FL-371), the pleading attached thereto, the order of joinder, and the summons." Navarro asserts it was error for the family court not to issue an order for service of the summons or that the trustee be served with the specified documents, and the family court's failure prevented him from moving forward with the joinder of the trustee. We need not decide the issue, since we are vacating part of the family court's order. If the family court has not directed issuance of the summons and service on the trustee during the pendency of this appeal, it is required to do so on remand.

In sum, we: (1) affirm the family court's denial of Navarro's request for a statement of decision; (2) affirm the family court's order joining the trustee so the court may make appropriate orders regarding Sanchez's obligation to pay one-half of the unreimbursed medical and child care costs that survive her death; and (3) vacate the family court's denial of Navarro's request to retroactively impose a monthly support order against Sanchez after her death that can be charged against the trust. If the family court has not directed issuance of the summons and service on the trustee as required by rule 5.24(e)(3), it must do so on remand. If Navarro wishes to continue with his modification proceeding, he first must request an appropriate representative of Sanchez's estate be substituted in her place as a party to that proceeding. We express no opinion on the merits of such a request or on whether Navarro's modification proceeding survives

Sanchez's death.  We conclude only that the family court's decision that it does not was premature.

## **DISPOSITION**

The family court's denial, in its May 30, 2013 order, of Navarro's request to retroactively impose a monthly support order against Sanchez after her death that can be charged against the trust is vacated.  The remainder of the order is affirmed.  If the family court has not already done so, it is directed to issue a summons and order the claimant served with the documents specified in California Rule of Court, rule 5.24(e)(3).  The parties shall bear their own costs on appeal.

_____

Gomes, J.

WE CONCUR:


_____

Hill, P.J.


_____

Cornell, J.